Bankers Life Company, Complainant Below, v. Mary B. Perkins, Defendant Below, Appellant, v. Condon Engineering Company et al., Appellees.

Gen. No. 38,443.

Opinion filed February 19, 1936.

EARL J. WALKER, of Chicago, for appellant.

JOHN E. VAN NATTA and JOHN B. KING, both of Chicago, for appellees.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal by Mary B. Perkins from a decree upon a bill of interpleader filed by the Bankers Life Company, a life insurance company, by which the pro-

ceeds of two assessment certificates were awarded to the Condon Engineering Company and the claim of Mary B. Perkins to said fund was denied.

It appears from the bill of complaint that the plaintiff, the Bankers Life Company (formerly Association), is a benevolent assessment insurance company incorporated under the statutes of Iowa relating to benevolent assessment insurance companies, with its principal place of business at Des Moines, Iowa. In 1904 one Charles P. Brevoort became a member, and two policies issued naming his sister, the defendant and appellant herein, as beneficiary in two certificates. The complaint alleges that "each of the said certificates was and is and the provisions thereof were and are subject to the laws of the State of Iowa applicable thereto and that by the express terms thereof the articles of incorporation and the by-laws of said plaintiff were expressly made a part of each of said certificates." (Abst. 2.)

In 1931 the name of the beneficiary was changed by the member to read "Edward J. Condon, creditor as his interest may appear, balance to Mary B. Perkins." A few weeks after the date of the above change of beneficiary, Edward J. Condon died and later in 1932, an alleged assignment was served on the company, purporting to transfer to the Condon Engineering Company all interest of the personal representative and heirs of Edward J. Condon. Thereafter in 1934, the member Charles P. Brevoort died, having made no change of beneficiaries after the death of Mr. Condon. There was a prayer of interpleader.

The answer and cross-petition of the Condon Engineering Company and Condon heirs alleged that Edward J. Condon in his lifetime had made loans to the member Brevoort and later in 1931, Brevoort being unable to keep up his assessment payments, the rights of the member had been assigned to Condon

as security for past loans and future payments of assessments and that by virtue of such loans by Condon and subsequent payments of assessments by these defendants they were entitled to the proceeds of the certificates.

The answer and cross complaint of Mary B. Perkins alleged that there were certain statutes of Iowa under which the Bankers Life Company was incorporated and under which it operated that became a part of its certificates by necessary implication; that such statute recited that no certificate shall be assigned; that any assignment shall be void; that the beneficiary may be changed at any time and no beneficiary shall have or obtain any vested right or interest in the certificate or benefits until such benefits shall become due and payable after the death of the insured; that the by-laws of the company stipulated that no beneficiary shall have or acquire any claims until after the death of the member; that the certificate issued herein stipulated in the event of the death of the beneficiary prior to the member or if no beneficiary was named, the benefits were to be payable to the estate of the member; that Mary B. Perkins was named as beneficiary and was the sole beneficiary surviving the member; that the certificate provided that it was issued subject to the by-laws and constitution of the company; and that death benefits were levied and paid after a member had died and in accordance with the above constitution, by-laws, statutes and provisions of the certificates, which barred any interest to other defendants herein who were not named in the certificates and had no rights therein.

The trial court over objection of Mary B. Perkins admitted in evidence an assignment of the heirs of Edward J. Condon of all their right in the certificates to the Condon Engineering Company, which was executed before the member died. Over like objections

the court admitted evidence of loans by Edward J. Condon to Charles P. Brevoort and checks and receipts for payment made by various Condon heirs to the Bankers Life Company, after the death of Condon and before the death of the member.

A decree of interpleader was entered in the case and plaintiff dismissed out of the case with its costs.

The question to be determined is as to who is entitled to the proceeds of the policy amounting to upwards of some $4,000 now in the hands of the clerk of the court.

The trial court decreed that the money should be paid to the Condon Engineering Company, from which order this appeal was perfected.

The facts in this case, about which there seems to be no dispute, are substantially as follows:

In 1925, Charles P. Brevoort was insured under two certificates of $2,000 each with the Bankers Life Co. of Des Moines, Iowa, a mutual concern. These policies were payable to Mary B. Perkins, his sister, as beneficiary. In 1925, Mr. Brevoort borrowed $2,500 from the claimant, E. J. Condon, for which he gave his note. This note was signed by Brevoort and also by the claimant herein, Mary B. Perkins. Later Condon loaned Mr. Brevoort the following sums, for which he took notes: $200; $72; $90; $85.50 and $100, making a total loan of $3,047.50, up to August 4, 1931, for which he took notes signed by Brevoort. All the notes bear interest from that date at the rate of six per cent.

The latter part of 1931, Mr. Brevoort asked Mr. Condon to advance him more moneys, which Mr. Condon refused to do, unless he had security. Mr. Brevoort then went to the office of Mr. Condon with the two certificates in the Bankers Life and told Mr. Condon that he would assign them to him, to secure what he owed him, if he would advance the money to pay

the premiums necessary to keep such certificates in force until his death. This Mr. Condon agreed to do.

After several conferences with Mr. Condon and some correspondence with the Bankers Life Company, and at the latter's suggestion and by agreement of Mary B. Perkins, the beneficiary was changed about August 1, 1931 to "E. J. Condon, creditor, as his interest may appear, balance to Mary B. Perkins, sister."

The policies were delivered to Condon and remained in his possession up to the time of his death and then passed into the hands of his administratrix and finally to the Condon Engineering Co. under proper assignments. The assignments are in evidence and uncontested. All payments of premiums after the assignments were made regularly by Mr. Condon's administratrix or the Condon Engineering Co. until the death of Mr. Brevoort, making a total of $1,381.50.

The amounts advanced by E. J. Condon to Mr. Brevoort in his lifetime and the payments made on premiums since, total $5,429.00, independent of interest charges.

After the death of Brevoort in 1934, proof of death was made to the insurance company by the Condon Engineering Co. and the amount of the policies tendered into this court on the bill of interpleader was $3,904.50 now in the hands of the clerk.

At the time of the death of Brevoort, Mary B. Perkins was living.

It is contended on behalf of the plaintiff Perkins that because of the provisions of the statutes of Iowa, preventing a beneficiary from having a vested interest in the death benefits to be payable under said policy until after the death of the insured, prevents the defendant Condon Engineering Co. or the heirs of Condon from recovering anything and that she should receive the entire amount. The section of the statute

upon which plaintiff Perkins relies, is Code of Iowa 1931, sec. 8694, and reads as follows:

"8694. Insurable Age — Beneficiary and change thereof—Assignment. No association organized or operating under this chapter shall issue a certificate of membership to any person under fifteen or over sixty-five years of age, or unless the beneficiary named in the certificate is the husband, wife, relative, legal representative, heir, creditor or legatee of the insured member nor shall any such certificate be assigned. Any certificate issued or assignment made in violation of this section shall be void. The beneficiary named in the certificate may be changed at any time at the pleasure of the assured, as may be provided for in the articles or by-laws, but no certificate issued for the benefit of a wife or children shall be thus changed so as to become payable to the creditors; provided that the foregoing provisions of this section shall not be applicable except as to certificates issued prior to July 4, 1923, to life associations organized and operating under this chapter issuing life insurance policies or certificates of membership, and any member or policyholder in any such life association shall have the right to designate his beneficiary, and unless the policy is issued without the right of revocation, shall have the right to change the beneficiary in the manner authorized by the rules, laws, and regulations of the association, or as may be provided in the policy contract; and no beneficiary under any policy shall have or obtain any vested right or interest in the death benefits to be payable under said policy, until such benefits shall become due and payable after the death of the insured. (C97, § 1789; C24, 27 § 8694.)"

The part plaintiff particularly relies upon is: ". . . *any member or policyholder in any such life association shall have the right to designate his beneficiary,*

*and unless the policy is issued without the right of
revocation, shall have the right to change the bene-
ficiary in the manner authorized by the rules, laws,
and regulations of the association, or as may be pro-
vided in the policy contract; and no beneficiary under
any policy shall have or obtain any vested right or
interest in the death benefits to be payable under said
policy, until such benefits shall become due and pay-
able after the death of the insured.*"

It will be seen by reading this statute that creditors
are amongst the class who are eligible to be named as
beneficiaries of the policy, such as was done in this
case. It will also be noted that the statute further
provides that the right of the insured to change the
beneficiary is qualified by the expression, "unless the
policy is issued without the right of revocation." Does
this section of the statute mean that a creditor having
advanced money to the insured, as in this case, and
having been named a beneficiary and the policy hav-
ing been delivered to him as security, that the insured
then has a right to change the beneficiary and elimi-
nate and destroy all the security and interest of the
creditor in the said policy? We do not believe that
this was the intention of the legislature. We believe
that when a creditor is named as a beneficiary, with
the consent of the company, it is the intention of the
legislature that this policy should be protected by the
clause in the statute "unless the policy is issued with-
out the right of revocation" and the policy becomes
a contract which is irrevocable without the consent of
the interested party, to wit, the creditor. To do other-
wise and to destroy the interest of the creditor was not
the intention of the legislature even though they had
the power.

We believe that the situation presented in this case
calls for equitable relief. The contract having been
executed in Illinois and the money having been de-

posited in Illinois, we think the remedy as provided by the laws of this State are applicable. As was stated in *Nell v. Nell*, 234 Ill. App. 164, at page 167: "It is undoubtedly the general rule that during the lifetime of a member of a mutual benefit association the beneficiary named in the certificate of insurance does not have a *vested*, but only a contingent, right therein and that the member has a right without the consent of the beneficiary to change the beneficiary at his pleasure without the consent of the beneficiary. *Columbian Circle v. Auslander*, 302 Ill. 603; *Delaney v. Delaney*, 175 Ill. 187; *Voigt v. Kersten*, 164 Ill. 314; . . . There are however exceptions to the general rule.

"In discussing this rule in 19 R. C. L. 1294, it is said:

" 'One notable exception to this rule, however, is that where the existing beneficiary was designated as such in return for a valuable consideration, the member cannot change the designation thus made without the consent of such beneficiary. A clause in the charter of a benefit society, which attaches the beneficial interest in the insurance to membership in the society, and permits the members to change the beneficiary or payee of the insurance at any time without the latter's consent, does not prevent the making of a contract by which a vested interest will pass to the designated beneficiary, which will compel the society to recognize him as the one entitled to the proceeds of the certificate.' "

In the case of *Supreme Council Royal Arcanum v. Tracy*, 169 Ill. 123, it was said:

"While a certificate like the one in question is not assignable at law, all beneficial interest therein may be transferred in equity. Equitable rights may be acquired in a beneficial certificate which may be enforced in a court of equity. (Bispham's Principles of Equity, chap. 8, 162–167.)"

In 29 Cyc. 128, it is said:

". . . equities may exist in favor of the original beneficiary which will preclude the member from substituting a new beneficiary who has no equity superior to that of the person originally designated. . . . An equity in favor of the original beneficiary precluding the substitution of another in his place may rest on a contract between him and the member, based on a sufficient consideration, by which he is to receive the benefits. Thus if a member designates a beneficiary, or, having designated a beneficiary, delivers the certificate to him, on an agreement that he shall receive the benefits, in consideration of past advances made by him, or present or future advances, or in consideration of his promise to pay dues and assessments, which promise is fulfilled, the member cannot thereafter substitute a different person as beneficiary."

In *Smith v. National Ben. Soc.*, 123 N. Y. 85, 25 N. E. 197, the Supreme Court of New York said:

"Where the right of the payee has no other foundation than the bare intent of the member, revocable at any moment, there can be no vested interest in the named beneficiary any more than in the legatee of a will before it takes effect. But the statute does not prevent a contract between the parties by force of which a vested interest does pass."

In *Sipe v. Sipe*, 102 Kan. 742, 173 Pac. 13, the Supreme Court of Kansas said:

"Where a husband agrees that if his wife will help to pay the assessments upon a certificate in a mutual benefit association in her favor he will not change the beneficiary, and in consequence of such agreement she makes a part of the payments thereon, using for the purpose what are in fact the proceeds of her own labor outside of her ordinary household duties, she cannot be displaced as such beneficiary without her consent. *Savage v. Modern Woodmen*, 84 Kan. 63, 3d par. Syl., 113 Pac. 802."

In the instant case Brevoort, the insured, owed some $4,000 to Edward J. Condon, evidenced by notes. Condon agreed to accept as security for the same two certificates of insurance upon Brevoort's life and to advance further money and to pay the premiums thereon. The intervener, Mary B. Perkins, was present when this agreement was made and she signed one of the notes so secured to the extent of $2,500. Manifestly, Condon immediately obtained a vested interest under this agreement in the said policy to which the insurance company agreed by accepting the change and entering it on their books. When the intervener, Mary B. Perkins, made claim upon the insurance company for the face of the policy, the latter recognized the equity interest involved and filed a bill of interpleader in Illinois and deposited the money with the court to determine the equitable rights of both claimants. Both the claimants to the fund recognized the jurisdiction of the court to settle this dispute and interpleaded as to each other and set up their respective claims which made the issue between them.

We do not think that the claimant Perkins who had no vested rights in this policy should have an interest in the proceeds of the same superior to that of Condon and his heirs. She was present when the agreement was made and signed one of the notes secured by the policy. It was a valid agreement to which she, Condon, Brevoort and the insurance company all agreed at the time it was executed, and it would now be inequitable not to carry out the intention of the parties and protect the equitable interest of the said Condon in the said fund. We are also of the opinion that the heirs succeeded to the rights of Condon.

In view of the fact that the heirs at law and next of kin of Edward J. Condon succeeded to his estate, we think the proceeds of these policies now in the hands of the court should have been given to his heirs and next of kin.

132

For the reasons given, the decree of the superior court is hereby reversed and the cause remanded with directions to amend said decree by ordering that said funds be given to the said heirs at law and next of kin of Edward J. Condon, deceased.

*Decree reversed and cause remanded with directions.*

HALL, P. J., and HEBEL, J., concur.