### BLACKMAN v. PRAETORIANS et al.
#### No. 14546.

Court of Civil Appeals of Texas. Dallas.
Nov. 28, 1952.

Rehearing Denied April 3, 1953.

Saner, Jack & Sallinger and H. Louis Nichols, all of Dallas, for appellant.

Mohrle, Oster & Kaufman and John N. Harris, Jr., all of Dallas, for appellees.

BOND, Justice.

This is a second appeal from a judgment entered on trial to the court without a jury in an interpleader action instituted by The Praetorians, a fraternal benefit association, against Eunice Blackman and the heirs of Sam T. Kaufman, deceased, to determine who is entitled to a fund deposited in court, —the proceeds of a life insurance certificate issued on the life of Dora Gottlieb.

The first appeal, Kaufman v. Blackman, 239 S.W.2d 422, was from a summary judgment under Rule 166-A, T.R.C.P., in favor of Eunice Blackman which was, on original submission, reversed and rendered in favor of the Kaufmans, and on motion for rehearing the cause was remanded (opinion by the majority, the writer here dissenting), to enable the appellee therein, if she may, establish aliunde in the trial court issuable facts that the assignee, Sam T. Kaufman, was a creditor-assignee of the insured, and if in fact he was such creditor, the assignment being security for debt not subsisting at the time of the death of the insured, the fund deposited by the interpleader was free of any such encumbrance. In this second appeal the record evidence shows, and it is admitted as a fact by appellant, that no evidence was introduced by Eunice Blackman or the Kaufmans that the assignment in question was executed as collateral security for debt as in the first appeal, nor was there any evidence introduced that any debtor-creditor relationship existed between Sam T. Kaufman and Dora Gottlieb at the time of her death.

This appeal hinges solely on plaintiff Eunice Blackman's claim to the fund as a designated beneficiary in the certificate and daughter of Dora Gottlieb; and the appellees, heirs of Sam T. Kaufman, deceased, claim the fund under the "Absolute assignment of policy" from the insured to Sam T. Kaufman. The certificate named Eunice Blackman beneficiary, at the death of the insured, subject, however, to the right of change of beneficiary by the insured by her making "written request on forms furnished by the Praetorians and filing the same at its Home Office and furnishing the certificate for endorsement of such change thereon."

The certificate was dated April 6, 1931.

On or about March 10, 1941 the insured Dora Gottlieb executed, signed, and notarized (caption in capital letters "Absolute assignment of policy") the assignment of the policy to Sam T. Kaufman in the manner and on form as furnished her by the insurer, and on March 12, 1941 the assignment was accepted by the Praetorians, filed in its Home Office, and attached to the certificate of insurance. Such was its condition at the time The Praetorians filed its interpleader, attaching the policy and assignment to its bill.

The provisions of the certificate as to change of beneficiary were for the benefit of the insurer, subject to such future disposal as the insured may direct. Thus the control of the certificate so far as the beneficiary named therein was concerned, vested in the insured. In this respect an insurance policy does not differ materially from any other contract authorized by law, and is subject to the same interpretation. A policy for the benefit of another reserving the right to change the beneficial designation by whatever means agreed upon, the law will respect any change the insured may make as to the beneficiary interest therein. Splawn v. Chew, 60 Tex. 532. The policy, as any contract, being property, is assignable and on the death of the assignee all rights thereunder descend to the assignee's heirs as other property.

This being the second appeal, 239 S.W.2d 422, the historical background and issuable facts are fully related in our former opinions, not materially different from the rec-

ord evidence here. We therefore by reference adopt our former opinion and the record there related without repetition or quoting therefrom more than we deem necessary in the disposition of this appeal. The benefit certificate having been made to Eunice Blackman, as beneficiary, subject to the right of change by the insured, Dora Gottlieb,—one of the provisions being: "The beneficiary or beneficiaries named in the certificate have no vested interests in same, and may be changed at any time by the insured making written request on The Praetorian's Form therefor and filing the same at its Home Office and furnishing this certificate for endorsement of said change thereon"; and the insured having made the assignment to Sam T. Kaufman, as she had the right to do, vested in "the above named assignee, his heirs, executors, administrators, successors or assigns", indefeasible right as provided therein to "all moneys due or to become due and payable under the same, together with full and complete authority to exercise any and all options, benefits and rights as provided in said policy, and all benefits accrued or to accrue under and by virtue of the terms, covenants, or conditions thereof, * * *."

The claim of appellees, children of the assignee Sam T. Kaufman, being based on the assignment which had the effect of changing the beneficiary under the applicable terms of the insurance certificate and the Constitution and Laws of the society in absence of evidence contrary to the terms, tenor, effect and reading of the assignment, the claim of appellant is subordinated to that of appellees; hence the judgment of

the court below is affirmed. All costs of appeal taxed against appellant.

YOUNG, J., dissents.

YOUNG, Justice (dissenting).

Appellees (heirs of Kaufman) concede, as does the present majority opinion, that the Kaufman assignment was not tantamount to a change of beneficiary;[1] yet asserting in common that a vested right passed to the assignee which descended to his heirs. The fallacy of such conclusion may be demonstrated by application of a well settled rule of law to the policy contract of which the Company by-laws and Constitution are a part: "In accordance with the general principle prevailing as to assignees of nonnegotiable choses in action, an assignee of an insurance policy as a general rule acquires no greater rights by virtue of the assignment than the assignor had * * *." 29 Am.Jur., p. 416; Modern Woodmen of America v. Shattuck, Tex.Civ. App., 266 S.W. 621. The instant assignment so declares in the recital that assignee "is authorized to receive, collect and receipt for any money or thing of value due or to become due under said policy, or as provided thereby, *as fully and completely as the assignors, or either of them, might or could do if this assignment had not been made,* * * *." (Emphasis mine.) Dora Gottlieb, during her lifetime, could not make this policy payable to herself or heirs (Art. XXI, sec. 1, By-laws and Constitution) without complying with its provision with respect to change of beneficiary. The assignee, in her stead, could likewise have ef-

---

1. If this assignment be given the effect of a change of beneficiary, then, ipso facto, any claim on part of the Kaufmans to the proceeds of the policy must fail. This is so because Sam Kaufman predeceased the policyholder, Dora Gottlieb; sec. 3, Art. XXI, Praetorian Constitution; then becoming effective to reinstate the original and designated beneficiary, Eunice Blackman. Section 3 provides, in part: "In the event of the death of a beneficiary prior to the death of a policy-holder, if said policy-holder fails to designate another beneficiary, then the amount which would have been due such deceased beneficiary under the policy shall be payable to the surviving beneficiary or beneficiaries, if any."

Parenthetically, it may be here stated that under the early Supreme Court case of Cawthorn v. Perry, 76 S.W. 383, 13 S.W. 268, the Kaufman assignment, though absolute in form, must be condemned as wholly invalid, said assignee admittedly having no insurable interest. But since Castillo v. Canales, 141 Tex. 479, 174 S.W.2d 251, (construing a fraternal benefit policy and later civil statutes in connection), a designated party may collect the proceeds of such insurance though without insurable interest.

fectuated such a change, but this he did not do. Assignee predeceased the insured with terms of the policy in status quo; and in consequence Eunice Blackman continued as the designated beneficiary. Requirements of this insurance contract must be followed if rights of the assignee are to become vested and superior.

A further word: The affirmance herein is premised on the "vested interest" of Sam Kaufman by virtue of the assignment. As to when and by what means the vesting of interest occurred, remains to the writer a puzzle. Can the status of assignee Kaufman be also that of a substituted beneficiary by way of contract as opposed to the usual method of appointment? 45 C.J.S., Insurance, § 416, p. 40. And the policy thereby transformed so that it became one payable to his estate or heirs? If so, this would constitute but another method of effectuating a change of beneficiary; and appellant as the designated beneficiary of fraternal benefit insurance can rightfully object to any such change unless accomplished in the manner provided by the policy. "When a mutual benefit society provides within its powers and limits of its charter a particular method of changing beneficiary or sets forth in its certificate a way by which the change may be made, *no change of beneficiary may be made in any other mode,* since the expression of one mode excludes other modes or manners of changing beneficiary." (Emphasis mine.) Garabrant v. Burns, 130 Tex. Civ. 518, 111 S.W.2d 1100, 1101, syl. 3. See also Kotch v. Kotch, Tex.Sup., 251 S.W.2d 520.

Furthermore, this record emphasizes the wide distinction in terminology between an assignment and a change of beneficiary in the field of life insurance; thereby pointing to another ground for reversal. Typical of an assignment is the transfer of a security interest only, which is rarely, if ever, the function of a change of beneficiary. That such is the usual office of an assignment of an insurance policy in Texas is borne out by all the cases which I have had occasion to examine; and it is with reference to commercial transactions—a debtor-creditor relationship—that Texas cases are shown to be in accord with the following editorial

note from 135 A.L.R.Annotations, p. 1041: "The great weight of authority is to the effect that where a life insurance policy reserves to the insured the right to change the beneficiary and is such that the insured has the right to assign the same, he may make such assignment without the consent of the beneficiary designated in the policy and without complying with the provisions of the policy prescribing the manner of changing the beneficiary, and upon the death of the insured, the assignee is entitled to the proceeds of the policy *to the extent of his interest,* as against the beneficiary." (Emphasis mine.) The policy in suit was a benefit certificate of insurance issued on the life of Dora Gottlieb on March 28, 1931, face amount $2,000, with The Praetorians, a fraternal benefit Society incorporated under the laws of Texas, as insurer; and Eunice Blackman the named beneficiary. On March 10, 1941 Dora Gottlieb executed an assignment of the policy to Sam T. Kaufman who died in 1943, leaving as his heirs the appellees. Dora Gottlieb died November 10, 1949, with appellant daughter still listed as the named beneficiary. Neither the assignee Kaufman nor his children were related to insured. There was no record evidence of any debtor-creditor relationship between the two, nor was any indebtedness claimed by the estate of Sam T. Kaufman against Dora Gottlieb; the inventory of his estate not listing the Praetorian policy as an asset. Insured Dora Gottlieb made all premium payments on the policy except the last (September 1949) which was paid by Eunice Blackman during its delinquency, for purpose of reinstatement.

According to Mr. Mills, Company auditor, Mrs. Gottlieb at time of paying premiums appeared in a palsied condition, speaking broken English only; telling him she could not read, and other than signing name, he judged that she could not write. The form of assignment in question was furnished policyholders, said the witness, for their convenience in evidencing "collateral for a debt"; and was distinctly foreign to the kind of instrument furnished for change of beneficiary. Such state of the record conclusively repels the inference of an absolute gift of the policy or even a purchase of all

beneficial interest. Otherwise, why would Mrs. Gottlieb continue payment of annual premiums until the year of her demise? On the other hand, the foregoing circumstances are susceptible of only a single inference, that is, of a past debtor-creditor relationship between assignor and assignee; the burden being on appellees (Kaufmans) to establish the existence of some pecuniary interest at time of trial; and when, as here, such burden has not been met, the claim that, perforce of an assignment absolute in form, appellant has been divested of all rights under the policy, should be disregarded.

This cause should be accordingly reversed and rendered in favor of appellant.

CRAMER, Justice.

I cannot agree with the reasoning of Chief Justice BOND or the dissenting opinion by Associate Justice YOUNG, but only to the affirmance of the case made on original submission. The liability of The Praetorians on the policy in question on the life of Dora Gottlieb, deceased, is admitted by The Praetorians who have tendered the proceeds due on the policy into the registry of the court.

Eunice Blackman, the beneficiary named in the policy, and the heirs of Sam T. Kaufman who claimed under an assignment of all interest therein, each claimed the proceeds of the policy. On the date of the assignment The Praetorians had special forms, " * * * One in the nature of change of beneficiary and the other an assignment." J. F. Mills, auditor for The Praetorians, testified, material here, that a duplicate policy had been issued at the request of, and delivered to, Dora Gottlieb, now deceased, on November 7, 1943. He further testified, without objection:

"Q. Now, what is the purpose of the issuance of the form for change of beneficiary, as denominated by the company? * * * A. For changing the beneficiary. The purpose of that form is for changing the beneficiary.

"Q. What is the purpose of the issuance of the assignment form by the insurer to its insured? A. Well, in other words, we keep on file a copy of that form, which is in a sense nothing more than collateral for a debt, I would say.

"Q. Are these forms just referred to, that is, the form for change of beneficiary and the form for an assignment, separate and distinct from each other? A. They are.

"Q. Is that the manner that they have been held by the company? A. That is right.

"Q. Is that the manner in which these forms are issued by the company? A. Yes.

"Q. Are these forms interchangeable? A. No.

"Q. Does the constitution and by-laws of the company prescribe the manner and form to effect a change of beneficiary? A. Yes, it does."

The form of the assignment here, omitting formal parts, was as follows:

"For and in consideration of the sum of One Dollar to me in hand paid, and for other valuable consideration, the receipt whereof is hereby acknowledged, I hereby sell, assign, transfer, set over and convey to Sam T. Kaufman whose post office address is 301 Fidelity Bldg., Dallas, Texas, all my right, title and interest in and to Policy No. 222749, issued on the life of Dora Gottlieb by The Praetorians, of Dallas, Texas, and all moneys due or to become due and payable under the same, together with full and complete authority to exercise any and all options, benefits and rights as provided in said policy, and all benefits accrued or to accrue under and by virtue of the terms, covenants or conditions thereof, inclusive of the absolute right to surrender said policy and to receive and collect the cash surrender value thereof, without notice to or consent of the assignors, or either of them, and at the sole option and/or election of the assignee; and for the same consideration I do also, for my heirs, executors and administrators, guarantee the validity and sufficiency of the foregoing assignment to the above named assignee, his heirs, executors, administrators, successors or assigns; and his title to said policy will forever warrant and defend. The assignee is authorized to receive, collect and receipt for any money or thing of value due or to become due un-

der said policy, or as provided thereby, as fully and completely as the assignors, or either of them, might or could do if this assignment had not been made, hereby releasing The Praetorians of and from all responsibility with reference to the application thereof and of and from all other and further liability by reason of the payment so made."

The form was signed and acknowledged by Dora Gottlieb before S. D. Henley, a notary public. Witness Mills further testified the premiums were paid by Mrs. Gottlieb and as far as he knew Sam T. Kaufman nor anyone for him or his estate ever paid any of the premiums on the policy. He did not believe Mrs. Gottlieb could read. She had said she could not read. He did not know whether or not she could write.

Eunice Blackman paid the last premium paid on the policy in September 1949. It was not until after Mrs. Gottlieb's death that The Praetorians notified Eunice Blackman the assignment in question was in their file.

The record further shows that two duplicate policies were issued,—the first on July 2, 1937. The second duplicate policy was accompanied by a letter dated October 7, 1943, to Mrs. Gottlieb, omitting formal parts, as follows:

"In accordance with your request, we are enclosing duplicate policy No. 222749. Our records show this policy was assigned to Mr. Sam T. Kaufman on March 10, 1941, at which time the copy of the assignment was attached to your policy. We do not have copy of this assignment to attach to your duplicate. We only have one copy and this copy must be retained for your file."

■ Under such record it is the writer's opinion the original opinion was in error where it recited that the assignment effected a change of beneficiary. The rights of the Kaufman heirs, if any, are under the assignment and not as beneficiaries.

The material question as to the rights of the parties here should be determined upon their relative rights; Eunice Blackman's based on her claim as the designated beneficiary, and the Kaufman heirs based on their claim as heirs of assignee Sam Kaufman, deceased, under the assignment.

■ Where, as here, the beneficiary's rights were in the policy itself, conditioned upon the insured's right to change the beneficiary at will, such beneficiary had no vested right in the policy and would acquire none until the death of the insured, and only then if her rights were not defeated by the assignment in question.

■ An assignment to a creditor is of course limited, whether so recited therein or not, to the amount of the debt.

■ The assignment here, however, is an absolute assignment of the entire policy without qualification; and without evidence to qualify its force, that is, to show it to be in fact security for a debt or a debtor-creditor relationship, or some other than an unqualified assignment, it is entitled to face value as an absolute assignment on the death of the assignor, and on the death of the assignee prior to the death of the assignor, the proceeds would go to the heirs of the assignee. While we find no adjudicated Texas case as authority, we adopt as the reasons, and as authority for our holding, the text in 46 C.J.S., Insurance, § 1169, p. 50, as follows:

■■ "Where a policy is assigned absolutely, and not merely as security for a debt, to a person possessing an insurable interest, he is entitled to the entire proceeds. On the other hand, while an assignment absolute in form, although in fact only for security, will entitle the assignee to receive the entire proceeds from the company, the assignee will have an ultimate right to the proceeds only to the extent of his claim, that is, the amount of the indebtedness due him and his expenses, if any, in keeping up the policy, and will be accountable for the balance to the persons entitled thereto. Except where the assignment otherwise provides, where an assignee acquires a vested interest in the policy his right to the proceeds, in the event of his death before the death of insured, will pass to his heirs."

There are two cases cited under such text, to wit: Alday v. Reliance Life Ins. Co., 61 Ga.App. 95, 5 S.E.2d 707; and Bankers

996

Life Company v. Perkins, 284 Ill.App. 122, 1 N.E.2d 712. See, also, Baldwin v. Wheat, 170 Ga. 449, 153 S.E. 194.

The record on the former appeal of this cause shows that the case was reversed and remanded, so that the appellant could show, if she could, a creditor-debtor relationship. The present record is silent as to such a relationship, and we of course, on such a record, cannot do otherwise than assume no such relationship existed.

It is therefore the writer's opinion that the assignment must be given full effect. The trial court, based on the assignment, reached a correct result and properly rendered judgment for appellees. I therefore concur in the order of affirmance, but not in the reasoning of Judge Bond in his opinion.

Motion for rehearing is

Overruled.

DIXON, C. J., concurs in this opinion.

YOUNG, J., dissents.